This is an action brought by plaintiff against defendants to foreclose a tax lien on defendants' real estate assessed for the year 1927. This was a motion in the cause made by M. C. Reardon and wife Callie Reardon, W. E. Nichols and the Federal Land Bank of Columbia, S.C., to vacate the judgment theretofore rendered on the ground that it was an irregular judgment rendered contrary to the course and practice of the court. The clerk found the facts and set the judgment aside. An appeal was taken by G. D. Woodley, the purchaser at the tax sale, to the Superior Court, *Page 269 
and the court below rendered judgment reversing the judgment of the clerk. The movants duly excepted and assigned error to the judgment as signed, and appealed to the Supreme Court.
We think the judgment of foreclosure in the action of plaintiff against the defendant, of the lien for taxes of 1927, was irregular and contrary to the course and practice of the court, and the judgment of the court below should be reversed.
The evidence is to the effect that M. C. Reardon and wife Callie Reardon owned a tract of land of about 70 acres, in Harnett County, North Carolina, worth some $3,000, or more, which was purchased under a tax foreclosure sale by G. D. Woodley for $175.20. The land was sold for 1927 tax, which was a first lien on the land. There were two other liens on this land: (1) Federal Land Bank of Columbia, S.C., for $1,500, (2) under the second lien W. E. Nichols purchased the land from E. T. Dupree, trustee at the trustee sale on 20 February, 1928, the deed to same was duly registered on 5 March, 1928, in Book 222 at p. 599 in the register of deeds office of Harnett County, North Carolina. The said Nichols took possession of the land which he rented to the defendants Reardons. In the foreclosure action brought by plaintiff thereafter against the Reardons to foreclose the tax liens, neither the Land Bank nor Nichols had any summons or complaint served on them, nor did they have actual notice of said action.
In this action the record discloses that the clerk made the following order, which is not excepted to: "It is further ordered, adjudged and decreed that W. E. Nichols, the Federal Land Bank of Columbia, Columbia, S.C., and G. D. Woodley, be and they are hereby made parties to this suit, to the end that they and each of them may file such pleadings as they may be advised."
The judgment of the court below sets forth the fact that "said appeal being heard by consent of all parties in interest, who were either present in person or represented by attorneys."
From the record it appears that all the interested parties to this controversy were before the court. They were before the clerk on the motion of the movants unexcepted to, and on appeal to the Superior Court the matter was heard by consent of all the parties in interest. They are all parties to the action by consent, and the contention of Woodley, the *Page 270 
purchaser at the tax sale, respondent, that they are not parties, cannot be sustained.
In Fowler v. Fowler, 190 N.C. at p. 539, citing numerous authorities, is the following: "An irregular judgment can be set aside by direct attack — motion in the cause by a party thereto — within any reasonable time and ordinarily showing merit." And further: "A judgment is said to be irregular whenever it is not entered in accordance with the practice and course of proceeding where it is rendered. The irregularities which have been treated as sufficient to justify the vacations of judgments are very numerous, and it is not possible to prescribe any test by which, in all jurisdictions, to determine whether or not a particular irregularity is such as to require the vacation of a judgment. When the irregularity does not go to the jurisdiction of the court, its action will be largely controlled by the promptness with which the application is made, and by the consideration whether or not the irregularity is one which could have operated to the prejudice of the applicant." 1 Freeman on Judgments, 5th ed., part sec. 218; Wolfe v. Davis, 74 N.C. 597; Duffer v. Brunson,188 N.C. 789.
We think, upon a careful examination of the record, that the judgment is irregular and contrary to the course and practice of the court. From the complaint in the action we find that it was brought to foreclose a tax lien then amounting to $48.36 on the land in controversy, but the complaint alleges: "That an inspection of the public records of Harnett County discloses that the defendants other than M. C. Reardon have liens on thelands described in paragraph 2 of the complaint. . . . That the plaintiff, county of Harnett, is entitled to have the equity of redemption of thedefendants in the above described lands foreclosed and forever barred, and to have a commissioner appointed to sell so much of the above mentioned lands as the court deems necessary to pay the said sums due on said certificate of sale, and the cost of this action, including one reasonable attorney's fee. Wherefore, the plaintiff does pray judgment as follows: . . . That the equity of redemption of the defendants in the lands referred to in paragraph 2 of the complaint be foreclosed and forever barred and that a commissioner be appointed to sell so much of the said lands as the court deems necessary to pay the aforesaid sum and the cost of this action."
The final decree, in part, reads: "It is, therefore ordered, adjudged and decreed that the said report and sale be and the same are hereby in all respects approved and confirmed and the said commissioner upon the payment of the purchase price be and he is hereby authorized and instructed to make and deliver a deed in fee simple for the said lands to G. D. Woodley, successors and assigns." *Page 271 
A deed under this decree was duly made to G. D. Woodley, the respondent, who now claims the land in fee simple, free and clear of all encumbrances, and a writ of assistance was issued to place Woodley in possession of the land. This was contrary to the allegations of the complaint, which only prayed that the equity of redemption of the defendants be foreclosed. It in no way affected the rights of the Federal Land Bank or Nichols, nor were they ever served with summons and complaint or had actual notice of the action. In fact, the sale is ineffectual, as the record discloses that Nichols had purchased the equity of redemption before it was sold in the action of the county of Harnett against the Reardons for tax lien. The purchaser, Woodley, either had record notice or in the exercise of due care should have discovered that he was buying a "pig in a poke."
In Jones on Mortgages, Vol. 2, 8th ed., part sec. 1325, p. 788, we find: "Although the mortgagor had forfeited his estate at law, courts of equity allowed him to redeem his estate within a reasonable time, upon payment of the debt and all proper charges, and this right was called an equity of redemption."
In Stevens v. Turlington, 186 N.C. at p. 194-5, Stacy, J., for the Court, says: "The decisions in this State are to the effect that, as between the mortgagor and the mortgagee, the legal title to the mortgaged premises is vested in the mortgagee, while the mortgagor is looked upon as the equitable owner of the land. This relative position continues until the land is redeemed or until the mortgage is foreclosed. Prior to the day of redemption, or condition broken, the mortgagor may pay the money according to the terms of his contract, and thus avoid the conveyance at law. This is termed his legal right of redemption. After the special day of payment has passed, or default suffered, the mortgagor still has the right to redeem at any time prior to foreclosure. This is called his equity of redemption; and such right is regarded as a continuance, and not a change, of his old estate."
Bispham's Principles of Equity, 10th ed., part sec. 151, p. 256, has the following: "This equity of redemption existed not only in favor of the mortgagor, but also of other parties claiming under him. Thus the heir, the devisee or the alienee (even though a volunteer) of the mortgagor, may redeem. So, also, may a subsequent mortgagee, or judgment creditor, or the crown, or the lord of the fee, on forfeiture. A tenant for life or for years, a remainderman, a reversioner, a tenant by the curtesy, or by devise, and a jointress may all redeem; and, in general, it may be said that this right exists in favor of any one who has an interest in the land, and would be a loser by foreclosure. But where a party is not affected by the mortgage, there is no occasion for redeeming, and he is not allowed to do so." To be sure plaintiff had a first lien in the land *Page 272 
for the tax, but the complaint was bottomed on the sale of the equity of redemption to pay same. The defendant Nichols bought this equity of redemption under the second deed of trust subject to the Land Bank.
Another important fact appears of record — that Nichols, subsequent to taking the deed and about the time he had it recorded, went to the county auditor's office, where the records of all back taxes were kept, and in company with a member of the board of county commissioners, inquired of the assistant auditor in charge as to any back taxes due against M. C. Reardon and Callie Reardon on the lands in controversy; the said W. E. Nichols, after the assistant auditor looked the record over, was informed by the officer that there were no unpaid taxes on the said lands in controversy for 1927, or any other year. That W. E. Nichols was able and ready to pay any taxes which were reported to him and that that was the purpose of his inquiry at the auditor's office of the plaintiff county of Harnett. That W. E. Nichols has paid all subsequent taxes except for 1931 upon the property in controversy and is now holding said property under his deed which he received from F. T. Dupree, trustee.
Although the clerk has no equitable jurisdiction, this action is now on appeal in the Superior Court, and it is held that where an equitable proceedings, brought before the clerk, who has no equity powers, is pending on appeal in a court having equity jurisdiction, the Supreme Court will permit the latter to retain control of the case, and make all necessary orders as though the case were regularly pending. Smith v. Gudger,133 N.C. 627.
Equity: "In its broadest and most general signification, this term denotes the spirit and the habit of fairness, justness, and right dealing which would regulate the intercourse of men with men — the rule of doing to all others as we desire them to do to us; or, as it is expressed by Justinian, `to live honestly, to harm nobody, to render to every man his due.' Inst. 1, 1, 3. It is therefore the synonym of natural right or justice. But in this sense its obligation is ethical rather than jural, and its discussion belongs to the sphere of morals. It is grounded in the precepts of the conscience, not in any sanction of positive law."
The judgment is irregular, of which the purchaser either had record notice or in the exercise of due care should have had notice. In good conscience, from this record, Nichols should not be deprived of the free simple title to the land which he purchased subject to the lien of the Federal Land Bank, and the parties should be placed in statu quo. The taxes for 1927, with the penalty, will have to be paid by Nichols, as they are a lien on his land, and the county should make restitution to Woodley, the respondent. The judgment of the court below is
Reversed. *Page 273